Case 3:23-cv-00415-TLT   Document 1   Filed 01/27/23   Page 1 of 20

1  BARBARA I. ANTONUCCI (SBN 209039)
   bantonucci@constangy.com
2  ANDREA N. RAWLINS (SBN 253715)
   arawlins@constangy.com
3  CONSTANGY, BROOKS, SMITH & PROPHETE LLP
4  601 Montgomery Street, Suite 350
   San Francisco, CA 94111
5  Telephone: 415.918.3000
   Facsimile:  415.918.3034
6
7  Attorneys for Defendant(s)
   COMMERCIAL ENTERPRISES, INC.
8
                    UNITED STATES DISTRICT COURT
9
                    NORTHERN DISTRICT OF CALIFORNIA
10

| SONNY BOY ORALIZA, individually and on behalf of all others similarly situated, | Case No.: |
|---|---|
| Plaintiff, | [Removed from Santa Clara County Superior Court, Case No.  22CV394059 ] |
| v. | **DEFENDANT COMMERCIAL ENTERPRISES, INC.'S NOTICE OF REMOVAL** |
| W.L. GORE & ASSOCIATES, INC., and DOES 1 through 20, inclusive | |
| Defendants. | *[Filed Concurrently with Declaration of Andrea N. Rawlins, Declaration of Jonathan Long and Declaration of Olga Barthel]* |
| | Complaint Filed: February 1, 2022 |
| | FAC Filed: April 12, 2022 |

DEF.'S NOTICE OF REMOVAL                                   CASE NO.

TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Defendant Commercial Enterprises, Inc. hereby removes the above-titled action from the Superior Court of the State of California for the County of Santa Clara to the United States District Court for the Northern District of California. This Court has original jurisdiction over this action based on the Class Action Fairness Act of 2005 ("CAFA"). Accordingly, removal is proper based on the following grounds:

### I. TIMELINESS OF REMOVAL

1. On February 1, 2022, Plaintiff Sonny Boy Oraliza ("Plaintiff") commenced the aforementioned lawsuit against Defendant W.L. Gore & Associates, Inc. ("Gore") by filing a Complaint in the Superior Court of California for the County of Santa Clara, titled *Sonny Boy Oraliza v. W.L. Gore & Associates, Inc.*, Case No. 22 CV394059 (the "State Court Action"). Declaration of Andrea Rawlins ("Rawlins Decl."), ¶ 2. Plaintiff subsequently filed a First Amended Complaint on April 12, 2022. *Id.* ¶ 7 (hereinafter, "FAC").

2. The time for filing a Notice of Removal does not run until a party has been formally served with the summons and complaint under the applicable state law "setting forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by **simultaneous service of the summons and complaint**") (emphasis added).

3. On October 7, 2022, Plaintiff amended the FAC to name Doe 1 as Defendant Commercial Enterprises, Inc. Rawlins Decl. ¶ 3. On December 19, 2022, for the first time, Plaintiff served Defendant Commercial Enterprises, Inc. by substituted service with the following: Summons; Class Action Complaint; Civil Case Cover Sheet; First Amended Class Action Complaint; Notice of Further Case Management Conference; Amendment to Complaint Naming Doe 1; and Civil Lawsuit Notice. *Id.* ¶ 4, Ex. 24. The foregoing was mailed to Defendant Commercial Enterprises, Inc.'s headquarters located at 21461 N. 78th Ave, Suite 190, Peoria, AZ 85382, on December 20, 2022. *Id.* ¶ 5. Thus, service on

Defendant Commercial Enterprises, Inc. was complete on December 30, 2022. Cal. Code Civ. Proc. §415.20 (providing service of a summons through substituted service is deemed complete on the tenth day after mailing).

4. This Notice of Removal is, therefore, timely filed having been accomplished on January 27, 2023, which is within 30 days of the date of service of the State Court Action on Defendant Commercial Enterprises, Inc. Rawlins Decl. ¶ 4, Ex. 24.

5. While Defendant Gore does not join in this Notice of Removal, Defendant Commercial Enterprises, Inc. is entitled under CAFA and pursuant to 28 U.S.C. 1453(b) to remove the State Court Action independently.

6. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders for the State Court Action are contained in Exhibits 1-27 to the Declaration of Andrea Rawlins.

7. No other party is named or has been validly served as of the date of this Notice of Removal. Rawlins Decl. ¶ 6.

## II. VENUE

8. The State Court Action was filed in the Superior Court of Santa Clara. Venue properly lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 84, 1391, 1441, and 1446.

## III. DIVISIONAL ASSIGNMENT

9. The State Court Action was filed in the Superior Court of Santa Clara and shall be assigned to the San Jose Division of the United States District Court for the Northern District of California.

## IV. NOTICE OF REMOVAL TO ADVERSE PARTY AND STATE COURT

10. As required by 28 U.S.C. § 1446(d), promptly after filing this Notice of Removal, Defendant Commercial Enterprises, Inc. will give written notice of such filing to Plaintiff's counsel of record and file a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California, County of Santa Clara.

## V. STATEMENT OF JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

11. This Court has jurisdiction over this case under CAFA, codified in pertinent part at 28

U.S.C. section 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. section 1446, because it is a civil action wherein: (1) the proposed class contains at least 100 members; (2) the total amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (3) there is diversity of citizenship between at least one class member and one defendant.

12. Under CAFA, a removing defendant need not submit any evidence of the facts establishing jurisdiction in its notice of removal. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014) (holding a notice of removal "need not contain evidentiary submissions"). Rather, "[a] defendant's notice of removal need include only a plausible allegation that the jurisdictional facts exist." *Id.* at 89. Evidence is required "only when plaintiff contests, or the court questions, the defendant's allegation." *Id.*

13. The United States Supreme Court in *Dart Cherokee* held that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court," adding that "CAFA should be read with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Id.* Following *Dart Cherokee*, the Ninth Circuit has directed the district courts to "interpret CAFA's provisions under section 1332 broadly in favor of removal . . . ." *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920 (9th Cir. 2019) (courts may not remand where notice of removal plausibly alleges the basis for removal, without giving the defendant an opportunity to prove the jurisdictional requirements are satisfied).

A. **This Case is a Proposed Class Action with a Putative Class of at Least 100 Members or Greater.**

14. Plaintiff brings this case as a class action. FAC ¶ 18 ("Plaintiff brings this action under Code of Civil Procedure § 382 on behalf of himself and all other similarly situated . . . ."). The FAC raises eight causes of action on behalf of Plaintiff and all "California citizens currently or formerly employed by Defendants as non-exempt employees in the State of California at any time between August 7, 2017 and the date of class certification." FAC ¶ 20. Specifically, the FAC alleges the following violations of the California Labor Code: (1) failure to pay minimum wages, (2) failure to pay overtime wages, (3) failure to provide meal periods, (4) failure to permit rest breaks, (5) failure to provide accurate

itemized wage statements, and (6) failure to pay all wages due upon separation of employment. *See generally* FAC. The FAC also alleges: (1) violations of the California Business and Professions Code §§ 17200, *et seq.*, and (2) a claim for the recovery of civil penalties pursuant to California's Private Attorneys General Act ("PAGA"). *Id.*

15. Plaintiff seeks damages on behalf of himself and members of the Putative Class ("Putative Class Members") including for unpaid minimum wages and unpaid overtime, premium pay for meal and rest period violations, liquidated damages, statutory penalties, and civil penalties. FAC ¶¶ 41, 42, 54, 75, 83, and 101. Plaintiff also seeks injunctive relief, restitution, interest, and attorneys' fees and costs. *Id.* at "Prayer for Relief."

16. Plaintiff brings this class action against both Defendants Gore and Commercial Enterprises, Inc. and asserts both are liable for the alleged violations of California law. Specifically, Plaintiff alleges "that each defendant acted in all respects pertinent to this action as the agent of the other defendant, carried out a joint scheme, business plan, or policy in all respect pertinent hereto, **and the acts of each defendant are legally attributable to the other defendant**." FAC ¶ 14 (emphasis added). Further, Plaintiff alleges that Defendants were the "employer and/or joint employer of Plaintiff and the class members." *Id.*

17. Defendant Commercial Enterprises, Inc.'s records show that between August 17, 2017 and January 1, 2023, approximately 301 Putative Class Members in California were on assignment at Gore through Commercial Enterprises, Inc. Declaration of Olga Barthel ("Barthel Decl."), ¶ 5.

18. Defendant Gore's records reflect that between August 7, 2017 and January 21, 2023, Gore directly employed approximately 312 Putative Class Members in California. Declaration of Jonathan Long ("Long Decl."), ¶ 4.

19. Based on Defendants Commercial Enterprises, Inc.'s and Gore's records, the present action is a putative class action with a putative class of more than 100 members.

**B. Minimal Diversity of Citizenship Exists.**

20. Pursuant to 28 U.S.C. section 1332(d)(2)(A), CAFA provides that "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000 . . . and is a class action in which . . . ***any member*** of a class of plaintiffs is a citizen of a

4

State different from **any defendant**." (emphasis added). *See also Bush v. Cheaptickets, Inc.*, 425 F.3d 683, 684 (9th Cir. 2005) (holding that unlike the complete diversity of citizenship generally required by § 1332(a), CAFA requires only "minimal diversity.").

21. **Plaintiff's Citizenship.** An individual's citizenship is determined by the individual's domicile. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is her permanent home, where she resides with the intent to remain or to which she intends to return. *See Lew v. Moss,* 797 F.2d 747, 749 (9th Cir. 1986). It is widely accepted among courts in the Ninth Circuit that a party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change. *See, e.g., Mondragon v. Capital One Auto Finance*, 736 F.3d 880, 885-86 (9th Cir. 2013). Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is prima facie the domicile"); *see also Zavala v. Deutsche Bank Trust Co. Americas*, No. C 13-1040 LB, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (where a plaintiff's complaint alleges he resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes").

22. Plaintiff informed Defendant Commercial Enterprises, Inc. that his address was 3278 Maple Leaf Ct, San Jose, CA 95121. Barthel Decl. ¶ 9. Plaintiff never informed Commercial Enterprises, Inc. of any change in his home address. *Id.* Thus, Commercial Enterprises, Inc. issued wage statements to Plaintiff with the same residential address in San Jose, California. *Id.*, Ex. 1. Further, Plaintiff alleges in the FAC that he is a resident of California and worked for Defendants during the relevant time periods of this action. FAC ¶ 10. As a result, and because there is no evidence to the contrary, since at least 2017 and through the date he filed this action, Plaintiff has been domiciled in California and is therefore a citizen of California for purposes of this jurisdictional analysis. *See, e.g., Adams v. W. Marine Prod, Inc.* 958 F.3d 1216, 1221 (9th Cir. 2020) (in connection with removal to federal court, a person's residence constitutes evidence of domicile and continuing domicile in a state establishes citizenship "unless rebutted with sufficient evidence of change").

23. **Defendant Commercial Enterprises, Inc. is Not a Citizen of California.** The citizenship of a corporation is both the state of its incorporation and the state of its principal place of

business. 28 U.S.C. § 1332(c)(1). When determining a corporation's principal place of business for purposes of diversity jurisdiction, courts refer to the place where a corporation's officers direct, control, and coordinate the corporation's activities. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). The principal place of business is where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control and coordination." *Id.*

24. Defendant Commercial Enterprises, Inc. is a corporation incorporated under the laws of Arizona. Barthel Decl. ¶ 2. Defendant Commercial Enterprises, Inc.'s principal place of business is also located in Arizona. *Id.* All officers and directors, including the chief executive officer, chief financial officer, and many other executive officers and employees of Defendant Commercial Enterprises, Inc. work and direct its operations from the corporate headquarters located in Peoria, Arizona. *Id.* ¶ 3. Consequently, Commercial Enterprises, Inc. is a citizen of Arizona.

25. **The Citizenship of Defendant Gore Is Not Necessary to Effectuate the Removal**. Because, as established above, there is diversity of citizenship between Plaintiff and Defendant Commercial Enterprises, Inc., determining Defendant Gore's citizenship is not necessary for purposes of this jurisdictional analysis and can be disregarded. *See Ehrman v. Cox Communications, Inc.*, 932 F.3d 1223, 1226 (9th Cir. 2019) (concluding CAFA confers jurisdiction on federal district courts over class actions when, among other things, "**any member** of a class of plaintiffs is a citizen of a State different from **any defendant**.") (emphasis added). Nonetheless, Gore is a corporation incorporated under the laws of Delaware and its principal place of business is also located in Delaware.

26. **Fictitious "Doe" Defendants are Disregarded for Jurisdictional Analysis.** The defendants Plaintiff designates as Does 1 through 10 in the Complaint are fictitious defendants and are not parties to this action. Pursuant to 28 U.S.C. § 1441(b)(1), the citizenship of defendants sued under fictitious names is disregarded for the purposes of determining diversity jurisdiction and cannot destroy the diversity of citizenship between the parties in this action. *Newcombe v. Adolf Coors Co.,* 157 F.3d 686, 690-91 (9th Cir. 1998) (inclusion of "Doe" defendants in a state court complaint has no effect on removal). Indeed, federal courts, unlike California state courts, do not recognize the existence of Doe defendants. *See, e.g., Tolefree v. Ritz*, 382 F.2d 566, 567 (9th Cir. 1967). The existence of Doe defendants 1 through 10, therefore, does not deprive this Court of jurisdiction.

27. Accordingly, Plaintiff, as a Putative Class Member, is a citizen of the State of California while Defendant Commercial Enterprises, Inc. is a citizen of the State of Arizona. Thus, the minimum diversity requirement under CAFA is satisfied.

## C. The Amount in Controversy Exceeds the $5,000,000 Requirement Under CAFA.

28. Without making an admission of liability or damages with respect to any aspects of this case or the proper legal test(s) applicable to Plaintiff's allegations on behalf of himself and the Putative Class Members, the amount in controversy exceeds the jurisdictional minimum required under CAFA as detailed below.

29. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdiction threshold." *Dart Cherokee*, 274 U.S. at 135. Moreover, a defendant need not set forth evidence establishing the amount in its notice of removal. *Id.* A defendant can establish the amount in controversy by "providing only a short and plain statement of the grounds for removal." *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019); *see also Dart Cherokee*, 135 S. Ct. at 547 (holding "evidentiary submissions are required only if 'the plaintiff contests, or the court questions, the defendant's allegations.'"); *see also Arias*, 936 F.3d at 922 ("Because some remnants of our former antiremoval presumption seem to persist, we reaffirm three principles that apply in CAFA removal cases. First, a removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements . . . [s]econd, when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions.").

30. "In determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." *Henry v. Cent. Freight Lines, Inc.*, 692 F.App'x 806, 807 (9th Cir. 2017). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010); *see also Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) ("In deciding the amount in controversy the Court looks to what the plaintiff has alleged, not what the defendants will owe.") (aff'd by 631 F.3d 1010 (9th Cir. 2011)). The burden of establishing the jurisdictional threshold "is not daunting, as courts

recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

31. The FAC fails to allege an amount in controversy, an estimated number of putative class members, or other facts from which it can be ascertained from the face of the pleadings that the case is one which is removable. Although Plaintiff does not plead a specific amount of damages, Defendant can easily demonstrate that the aggregate amount in controversy in the present action exceeds $5,000,000.00. Defendant provides the following calculations only to demonstrate that the amount in controversy in this case easily exceeds the jurisdictional amount but makes no admission of any liability or damages with respect to any aspect of this case, or to the proper legal test to be applied to Plaintiff's claims. Nor does Defendant waive its right to ultimately contest the proper amount of damages due, if any, should Plaintiff prevail with respect to any of his claims. As described below, even when *excluding* Plaintiff's claims for injunctive relief, civil penalties pursuant to PAGA, interest and costs, the amount in controversy in the present action is at least **$12,751,762.69**.

      **a.**    **The Putative Class**

32. Defendant Commercial Enterprises, Inc. is an Arizona staffing, payroll, and vendor management company. Barthel Decl. ¶ 2. Defendant Commercial Enterprises, Inc.'s records show that between August 7, 2017 and January 1, 2023, approximately 301 non-exempt, hourly employees in California were on assignment at Gore through Commercial Enterprises, Inc. Barthel Decl. ¶ 5. These non-exempt, hourly employees worked approximately a total of about 4,676 workweeks between August 7, 2017 and January 1, 2023. *Id.*

33. Defendant Commercial Enterprises, Inc.'s records show that between August 7, 2018 and January 1, 2023, approximately 248 non-exempt, hourly employees are no longer working at Gore through assignment by Commercial Enterprises, Inc. *Id.* ¶ 7.

34. During the one year prior to the filing of the Complaint (i.e., February 1, 2021) through January 1, 2023, Defendant Commercial Enterprises, Inc.'s records show that approximately 150 non-

exempt, hourly employees in California were on assignment at Gore through Commercial Enterprises, Inc. *Id.* ¶ 8. These employees worked a total of about 1,741 pay periods. *Id.*

35. Defendant Commercial Enterprises, Inc. paid the non-exempt, hourly employees assigned to work at Gore weekly and these employees were paid an average straight-time rate of about $23.57 during the period between August 7, 2017 and January 1, 2023. *Id.* ¶ 6.

36. Defendant Gore is a manufacturing company specializing in products derived from fluoropolymers. Long Decl. ¶ 2. Defendant Gore's records indicate that it directly employed approximately 312 non-exempt, hourly employees in California between August 7, 2017 through January 21, 2023. Long Decl. ¶ 3. These employees worked approximately a total of about 53,762 additional workweeks. *Id.*

37. Defendant Gore's records indicate that between August 7, 2018 through January 21, 2023, 59 non-exempt, hourly employees were terminated or resigned their employment with Defendant Gore. *Id.* ¶ 6.

38. During the one year prior to the filing of the Complaint (i.e., February 1, 2021) through January 21, 2023, Defendant Gore directly employed approximately 282 non-exempt, hourly employees in California. *Id.* ¶ 7. These employees worked a total of about 10,544 additional pay periods. *Id.*

39. Defendant Gore's employees in California are paid bi-weekly and these employees were paid an average straight-time rate of about $29.55 during the period between August 7, 2017 and January 21, 2023. *Id.* ¶ 5.

      **b. Plaintiff's Claim for Unpaid Minimum Wages**

40. The FAC alleges that "During the relevant time period, Defendant regularly failed to pay at least minimum wage to Plaintiff and Class Members for all hours worked pursuant to Labor Code §§ 1194 and 1197." FAC ¶ 40. Plaintiff also seeks to "recover liquidated damages in an amount equal to the wages unlawfully unpaid . . . ." *Id.* ¶ 42. Plaintiff asserts these alleged violations of California's minimum wage laws are part of a "**systematic** pattern of wage and hour violations." *Id.* ¶ 3 (emphasis added).

41. The statute of limitations of recovery of damages for failure to pay minimum wages is three years. Cal. Civ. Proc. Code § 338(a). However, Plaintiff additionally seeks restitution of unpaid

9

minimum wages pursuant to California Business & Professions Code section 17200, *et seq*. (FAC. ¶ 87(a)), which has a four-year statute of limitations. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 178-79 (2000) ("We recognize that any business act or practice that violates the Labor Code through failure to pay wages is, by definition…an unfair business practice… *Any* action on *any* UCL cause of action is subject to the four-year period of limitations created by that section.") (emphasis in original). Thus, the statute of limitations for Plaintiff's claim for unpaid minimum wages is four years. Further, California Labor Code section 1194.2 provides that claims for liquidated damages are subject to the same statute of limitations as that of the claim for underlying minimum wages, which in this case is four years. Plaintiff, however, extends the start of the four-year statute of limitations for this claim to August 7, 2017 to account for purported COVID Emergency Tolling. FAC ¶ 20. Although Defendant Commercial Enterprises, Inc. reserves the right to challenge the propriety of Plaintiff's assertion that COVID Emergency Tolling applies in the present case, for purposes of the Notice of Removal Defendant Commercial Enterprises, Inc. will use August 7, 2017 through the date of the present removal as the relevant period for this claim.

42. Based on Plaintiff's allegations of "systemic" wage and hour violations, an estimated violation rate of one hour of unpaid minimum wages per week per class member is reasonable. *See Lucas v. Michael Kors (USA), Inc.*, No. CV 18-1608-MWF (MRWx), 2018 WL 216403, *7-8 (C.D. Cal. May 9, 2018) (concluding defendant's estimate of one hour of unpaid minimum wages per week per class members was reasonable given plaintiff's allegation defendant's "consistent policy of failing to pay wages."); *Cabrera v. South Valley Almond Company, LLC*, No. 1:21-CV-00748-AWI-JLT, 2021 WL 5937585, at *7 (E.D. Cal. Dec. 16, 2021) (same).

43. Conservatively assuming that the Putative Class Members assigned to work at Gore through Defendant Commercial Enterprises, Inc. worked one hour per work week without being paid at least minimum wage, the potential unpaid minimum wages total **$60,039.84**. (4,676 workweeks *times* 1 hour of unpaid minimum wages a week *times* the average minimum wage rate of $12.84).

44. Conservatively assuming that the Putative Class Members directly employed by Defendant Gore worked one hour per work week without being paid at least minimum wage, the potential unpaid minimum wages total an additional **$690,304.08.** (53,762 workweeks *times* 1 hour of

unpaid minimum wages a week *times* the average minimum wage rate of $12.84).

45. Given that Plaintiff also seeks to recover liquidated damages pursuant to Labor Code section 1194.2 in the amount equal to alleged unpaid minimum wages owed by Defendant Commercial Enterprises, Inc. and Defendant Gore, the value of Plaintiff's claim for liquidated damages is also at least **$750,343.92**.

46. Therefore, the amount in controversy for the First Cause of Action for failure to pay minimum wages is: **$1,500,687.84**.

### c. Plaintiff's Claim for Unpaid Overtime Wages

47. The FAC alleges "[d]uring the relevant time period, Defendants failed to pay Plaintiff and Class Members overtime wages for all overtime hours worked at the correct rate." FAC ¶ 50. Further, the FAC alleges "Defendants' failure to pay Plaintiff and Class Members the unpaid balance of overtime and double time compensation, as required by California law, violates the provisions of Labor Code §§ 510 and 1198, and is therefore unlawful." Plaintiff asserts these alleged violations of California's overtime wage laws are part of a "**systematic** pattern of wage and hour violations." *Id.* ¶ 3 (emphasis added).

48. The statute of limitations of recovery of damages for failure to pay overtime wages is three years. Cal. Civ. Proc. Code § 338(a). However, Plaintiff additionally seeks restitution of unpaid wages pursuant to California Business & Professions Code section 17200, *et seq*. (FAC ¶ 87(a)), which has a four-year statute of limitations. *Cortez*, 23 Cal.4th at 178-79 (holding that the UCL's four-year limitations period.) Thus, the statute of limitations for Plaintiff's claim for unpaid wages is four years. Plaintiff, however, extends the start of the four-year statute of limitations for this claim to August 7, 2017 to account for purported COVID Emergency Tolling. FAC ¶ 20. Although Defendant Commercial Enterprises, Inc. reserves the right to challenge the propriety of Plaintiff's assertion that COVID Emergency Tolling applies in the present case, for purposes of the Notice of Removal Defendant Commercial Enterprises, Inc. will use August 7, 2017 through the date of the present removal as the relevant period for this claim.

49. Based on Plaintiff's allegations of "systemic" wage and hour violations, an estimated violation rate of one hour of unpaid overtime wages per week per class member is reasonable. *See*

*Tamimi v. SGS North America, Inc.*, No. SACV 19-00965 AG (KSx), 2019 WL 3408692, at *2 (C.D. Cal. July 29, 2019) (finding defendant's assumption that each class member worked one hour of unpaid overtime per week "conservative" given plaintiff's allegation that defendant engaged in a "systemic pattern of state wage and hour violations"); *Ramirez v. HV Global Mgmt. Corp.*, No. 21-cv-09955-BLF, 2022 WL 1210402, at *4 (N.D. Cal. Apr. 25, 2022) (concluding a 25% violation rate for unpaid overtime wage claim was reasonable).

50. Conservatively assuming that the Putative Class Members assigned to work at Gore through Defendant Commercial Enterprises, Inc. worked one hour per work week without being paid overtime wages, the potential unpaid overtime wages total **$165,319.98**. (4,676 workweeks *times* 1 hour of unpaid overtime wages a week *times* the average overtime rate of $35.35).

51. Conservatively assuming that the Putative Class Members directly employed by Defendant Gore worked one hour per work week without being paid overtime wages, the potential unpaid overtime wages total an additional **$2,383,000.65**. (53,762 workweeks *times* 1 hour of unpaid overtime wages a week *times* the average overtime rate of $44.32).

52. Therefore, the amount-in-controversy for the Second Cause of Action for failure to pay overtime wages is: **$2,548,320.63**.

### d. Plaintiff's Claim for Meal Period Violations.

53. The FAC alleges that "Plaintiff and Class Members did not receive compliant meal periods . . . because their meal periods were missed, late, short, and/or they were not permitted to take a second meal period." FAC ¶ 60. Based on this allegation, Plaintiff claims that "Defendants' failure to pay Plaintiff and Class Members an additional hour of pay for each day a compliant meal period was not provided, Plaintiff and Class Members suffered and continue to suffer a loss of wages and compensation." *Id.* at 63. Plaintiff asserts these alleged violations of California's meal period laws are part of a "**systematic** pattern of wage and hour violations." *Id.* ¶ 3 (emphasis added).

54. Labor Code Section 226.7(b) requires an employer to pay an employee one (1) additional hour of pay at the employee's regular rate of compensation for each workday that a compliant meal period is not provided. Claims for meal period violations are subject to the three-year statute of limitations in Code of Civil Procedure section 338(a). *Murphy v. Kenneth Cole Prod.'s, Inc.*, 40 Cal.4th

1094, 1102-14 (2007). However, Plaintiff additionally seeks meal period premium pay pursuant to California Business & Professions Code sections 17200, *et seq.* (*Id.* ¶ 87(b)), the statute of limitations on which is four years. *Cortez, supra*, 23 Cal.4th at 178-79. Plaintiff, however, extends the start of the four-year statute of limitations for this claim to August 7, 2017 to account for purported COVID Emergency Tolling. FAC ¶ 20. Although Defendant Commercial Enterprises, Inc. reserves the right to challenge the propriety of Plaintiff's assertion that COVID Emergency Tolling applies in the present case, for purposes of the Notice of Removal Defendant Commercial Enterprises, Inc. will use August 7, 2017 through the date of the present removal as the relevant period for this claim.

55. Based on Plaintiff's allegations of "systemic" wage and hour violations, an estimated violation rate of one unpaid meal premium per week per class member is reasonable. *See Ramirez*, 2022 WL 1210402 at *6 (concluding a 25% violation rate in a meal period violation claim reasonable and observing that courts in the Northern District have found violation rates of 25% to 60% reasonable).

56. Conservatively assuming that the Putative Class Members assigned to work at Gore through Defendant Commercial Enterprises, Inc. missed one meal period a week, the amount in controversy for alleged unpaid meal period premiums is **$110,213.32**. (4,676 workweeks *times* 1 unpaid meal premium a week *times* the average straight-time rate of $23.57).

57. Conservatively assuming that the Putative Class Members directly employed by Defendant Gore missed one meal period a week, the amount in controversy for alleged unpaid meal period premiums is an additional **$1,588,667.10**. (53,762 workweeks *times* 1 unpaid meal premium a week *times* the average straight-time rate of $29.55).

58. Therefore, the amount-in-controversy for the Third Cause of Action for failure to pay meal period premiums is: **$1,686,880.42**.

e. **Plaintiff's Claim for Rest Break Violations.**

59. The FAC alleges that "Plaintiff and Class Members did not receive ten (10) minute rest period for every four (4) hours worked or major fraction thereof worked because they were required to work through their daily rest periods and/or were not authorized to take their rest periods." FAC ¶ 67. Based on this allegation, Plaintiff claims that "Defendants' failure to pay Plaintiff and Class members an additional hour of pay for each day a compliant rest period was not provided, Plaintiff and Class

Members suffered and continue to suffer a loss of wages and compensation. *Id.* ¶ 70. Plaintiff asserts these alleged violations of California's rest period laws are part of a "**systematic** pattern of wage and hour violations." *Id.* ¶ 3 (emphasis added).

60. Labor Code § 226.7(b) requires an employer to pay an employee one (1) additional hour of pay at the employee's regular rate of compensation for each workday that a compliant rest period is not provided. Claims for rest period violations are subject to the three-year statute of limitations in Code of Civil Procedure section 338(a). *Murphy*, 40 Cal. 4th at 1102-14. However, Plaintiff additionally seeks rest period premium pay pursuant to California Business & Professions Code sections 17200, *et seq.* (FAC ¶ 87(c)), the statute of limitations on which is four years. *Cortez*, 23 Cal. 4th at 178-79. Plaintiff, however, extends the start of the four-year statute of limitations for this claim to August 7, 2017 to account for purported COVID Emergency Tolling. FAC ¶ 20. Although Defendant Commercial Enterprises, Inc. reserves the right to challenge the propriety of Plaintiff's assertion that COVID Emergency Tolling applies in the present case, for purposes of the Notice of Removal Defendant Commercial Enterprises, Inc. will use August 7, 2017 through the date of the present removal as the relevant period for this claim.

61. Based on Plaintiff's allegations of "systemic" wage and hour violations, an estimated violation rate of one unpaid rest period premium per week per class member is reasonable. *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (concluding a 60% violation rate for meal periods and 30% violation rate for rest periods is reasonable); *See also Alvarez v. Office Depot, Inc.*, No. CV 17-7220 PSG (AFMx), 2017 WL 5952181, at *3 (applying a 60% rate for both meal and rest period claims).

62. Conservatively assuming that the Putative Class Members assigned to work at Gore through Defendant Commercial Enterprises, Inc. missed one rest period a week, the amount in controversy for alleged unpaid rest period premiums is **$110,213.32**. (4,676 workweeks *times* 1 unpaid rest premium a week *times* the average straight-time rate of $23.57).

63. Conservatively assuming that the Putative Class Members directly employed by Defendant Gore missed one rest period a week, the amount in controversy for alleged unpaid rest period premiums is an additional **$1,267,170.34**. (53,762 workweeks *times* 1 unpaid rest premium a week *times*

the average straight-time rate of $29.55).

64. Therefore, the amount-in-controversy for the Fourth Cause of Action for failure to pay rest period premiums is: **$1,377,383.66**

    f.  **Plaintiff's Claim for Wage Statement Violations.**

65. The FAC alleges that "Defendants have knowingly and intentionally failed to comply with Labor Code § 226(a) on wage statements that were provided to the Class Members." FAC ¶ 73. Based on this alleged violation, Plaintiff claims that she and other class members are "entitled to recover from Defendants the greater of all actual damages caused by Defendants' failure to comply with Labor Code § 226(a)… in an amount not exceed four thousand dollars ($4,000.00) per employee, plus attorneys' fees and costs." *Id.* ¶ 75.

66. Labor Code § 226(e) provides a minimum of $50 for the initial violation as to each employee, and $100 for each further violation as to each employee, up to a maximum penalty of $4,000 per employee. The statute of limitations for recovery of penalties under Labor Code § 226 is one year. *Caliber Bodyworks, Inc. v. Sup. Ct.*, 134 Cal. App. 4th 365, 376 (2005); Cal. Civ. Proc. Code § 340(a). For purposes of this Notice of Removal, Defendant Commercial Enterprises, Inc. will use February 1, 2021 (i.e., the date of the filing of the Complaint) through January 13, 2023 as the relevant period for this claim.

67. In order to calculate a conservative amount in controversy for Plaintiff's wage statement claim, Defendant assumes, but does not admit, that all putative class members did not receive an accurate wage statement for all pay periods worked during the one-year statute of limitations for this claim. This assumption is reasonable given that Plaintiff alleges in the FAC that "[d]uring the relevant time period, Defendants have knowingly and intentionally failed to comply with Labor Code § 226(a) on wage statements that were provided to Plaintiff and Class Members." *Id.* ¶ 73; *See Moppin v. Los Robles Regional Med. Ctr.*, No. EDCV 15-1551 JGB (DTBx), 2015 WL 5618872, at *3 (C.D. Cal. Sept. 24, 2015) (concluding a 100% violation rate was justified because the plaintiff asserted in her complaint that "at all relevant times herein, defendants intentionally and willfully failed to furnish plaintiff and the class members with accurate wage statements."). Further, given the various primary violations alleged by Plaintiff that are purportedly part of a "systematic pattern of wage and hour violations," assuming a

DEF.'S NOTICE OF REMOVAL    CASE NO.:

1  100% violation is reasonable in light of the fact that Plaintiff's wage statement claim is derivative of her unpaid minimum wage, unpaid overtime wage, and unpaid meal and rest period premium claims.

68. As set forth above in paragraph 34 above, 150 Putative Class Members were on assignment at Gore through Defendant Commercial Enterprises, Inc. These Putative Class Members worked 1,741 pay periods during the year prior to the filing of the Complaint through January 1, 2023. This results in approximately **$166,600** in potential statutory penalties pursuant to Labor Code section 226(e). ((150 initial violations *times* $50) + (1,591 subsequent violations *times* $100)).

69. As set forth above in paragraph 38 above, 282 Putative Class Members directly employed by Defendant Gore worked an additional 10,544 pay periods, during the year prior to the filing of the Complaint through January 21, 2023. This results in approximately **$1,040,300.00** in additional potential statutory penalties pursuant to Labor Code section 226(e). ((282 initial violations *times* $50) + (10,262 subsequent violations *times* $100)).

70. Therefore, the amount-in-controversy for the Fifth Cause of Action for alleged inaccurate wage statements is: **$1,206,900.00**.

### g. Plaintiff's Claim for Waiting Time Penalties.

71. The FAC alleges that Defendant failed to timely pay wages due, in violation of California Labor Code sections 201-203. Plaintiff alleges that "During the relevant time period, Defendants willfully failed to pay the Waiting Time Subclass all their earned wages upon termination, including, but not limited to, proper minimum wage and overtime compensation, meal period premiums, and rest period premiums either at the time of discharge of within seventy-two (72) hours of their leaving Defendants' employ." FAC ¶ 80.

72. On these grounds, Plaintiff seeks "waiting time penalties" under California Labor Code § 203. *Id.* at ¶¶ 78-83. Under California Labor Code § 203, a discharged employee is entitled to penalties of up to 30 days' pay at his or her regular pay. *See* Cal. Lab. Code § 203(a) ("If an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days"). Plaintiff seeks to certify a Waiting Time Subclass of "[a]ll Class Members who separate their employment with Defendants at any

time between August 7, 2018 and the date the class is certified." *Id.* at ¶ 21. Although Defendant Commercial Enterprises, Inc. reserves the right to challenge the propriety of Plaintiff's assertion that COVID Emergency Tolling applies in the present case, for purposes of the Notice of Removal Defendant Commercial Enterprises, Inc. will use August 7, 2018 through the date of the present removal as the relevant period for this claim.

73. It is reasonable to assume that each employee in the subclass waited over 30 days for payment of any allegedly unpaid wages. *See McCollum v. TGI Friday's, Inc.*, No. SACV 22-00392-FWS-JDE, 2022 WL 2663870, at *7 (C.D. Cal. June 22, 2022) (concluding defendant's assumptions that each employee waited at least 30 days to receive their wages owed after termination (i.e., the maximum penalty) was reasonable given that "plaintiff's allegations under this claim are based on the 'systematic pattern' of violations by Defendant and concern Defendant's "fail[ure] to pay the Waiting Time Subclass all their earned wages upon termination, including, but not limited to, meal period premiums, and rest period premiums.'"); *Tajonar v. Echosphere, LLC*, No. 14cv2732-LAB (RBB), 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (finding reasonable the defendant employer's assumption that each employee was entitled to the maximum thirty-day penalty); *Ramirez*, 2022 WL 1210402 at *6 (concluding a 100% violation rate is reasonable for waiting time penalties where the complaint at issue contained no guidance on the extent of the violations the plaintiff was alleging).

74. As set forth in paragraph 33 above, during the relevant period for the Waiting Time Subclass, approximately 248 non-exempt, hourly employees are no longer working at Gore through assignment by Defendant Commercial Enterprises, Inc. On average, these non-exempt, hourly employees worked 8-hour shifts and earned an average straight-time rate of approximately $23.71. Barthel Decl. ¶ 7. Assuming that these non-exempt, hourly employees are entitled to 8 hours of pay for 30 days in penalties, then potential waiting time penalties amount to **$1,411,219.20**. ($23.71 average hourly rate *times* 8 hours per day *times* 30 days *times* 248 employees).

75. As set forth in paragraph 37 above, during the relevant period for the Waiting Time Subclass, approximately 59 non-exempt, hourly employees in California have separated from their employment with Defendant Gore. On average, these non-exempt, hourly employees worked 8-hour shifts and earned an average straight-time rate of approximately $30.31. Long Decl. ¶ 6. Assuming that

1  these separated non-exempt, hourly employees would be entitled to 8 hours of pay for 30 days in
2  penalties, then potential waiting time penalties amount to an additional **$429,189.60**. ($30.31 average
3  hourly rate *times* 8 hours per day *times* 30 days *times* 59 employees).

4      76.    Therefore, the amount-in-controversy for the Sixth Cause of Action for waiting time
5  penalties is: **$1,840,408.80**.

6          **h.**    **Attorneys' Fees.**

7      77.    Plaintiff also seeks attorneys' fees. FAC at "Prayer for Relief." Requests for attorneys'
8  fees must also be taken into account in ascertaining the amount in controversy. *Galt G/S v. JSS
9  Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included
10 in amount in controversy, regardless of whether award is discretionary or mandatory); *Brady v.
11 Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Where the law entitles the
12 prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred
13 to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount
14 in controversy.")

15     78.    The Ninth Circuit in *Arias* explicitly confirmed that "when a statute or contract provides
16 for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the
17 amount in controversy," including in the context of determining CAFA jurisdiction and as a "principle[]
18 that appl[ies] in CAFA removal cases." *Arias*, 936 F.3d at 922. In the class action context, courts have
19 found that 25 percent of the aggregate amount in controversy is a reasonable benchmark for an attorneys'
20 fees award under the "percentage of fund" calculation and courts may depart from this benchmark when
21 warranted. *See, e.g., Anderson v. Starbucks Corp.*, 556 F. Supp. 3d 1132 (N.D. Cal. 2020) (concluding
22 courts in the Ninth Circuit have treated a potential 25% fee award reasonable for purposes of calculating
23 the amount in controversy in CAFA cases); *Fong v. Regis Corp.*, No. C 13-04497 RS, 2014 WL 26996,
24 at *7 (N.D. Cal. Jan. 2, 2014) ("Courts in this circuit have held that, for purposes of calculating the
25 amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that
26 plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected
27 damages.").

28     79.    Labor Code sections 226(e), 1194, and 1194.3 authorize the recovery of reasonable

1  attorneys' fees in actions for the recovery of unpaid wages, unpaid meal and rest premiums, waiting time
2  penalties, and statutory penalties for inaccurate wage statements. Assuming that Plaintiff is able to
3  recover attorneys' fees equal to 25% of the amount recovered for his purported claims for unpaid wages,
4  meal period and rest break violations, waiting time penalties, and inaccurate wage statements (excluding
5  any attorneys' fees for injunctive relief or interest), the amount of attorneys' fees in controversy is at
6  least **$2,543145.34**.

        **i.**    **Total Amount in Controversy.**

80. Thus, the amount in controversy in the present action totals, *at a bare minimum*, **$12,715,726.69** which far exceeds the $5,000,000 jurisdictional minimum under CAFA.

### VI. CONCLUSION

81. Minimum diversity of citizenship exists inasmuch as Plaintiff is a citizen of California and Defendant Commercial Enterprises, Inc. is a citizen of Arizona. Furthermore, the amount in controversy exceeds $5,000,000, and the number of putative class members in this proposed class action is greater than 100. Accordingly, this Court has original jurisdiction over this action pursuant to CAFA and Defendant Commercial Enterprises, Inc. has properly removed the State Court Action to this Court pursuant to 28 U.S.C. sections 1332, 1441, 1446, and 1453.

82. WHEREFORE, Defendant Commercial Enterprises, Inc. requests that the above-entitled action pending before the Superior Court of the State of California for the County of Santa Clara be removed to the United States District Court for the Northern District of California.

Dated: January 27, 2023        CONSTANGY, BROOKS, SMITH & PROPHETE LLP

                                By: */s/ Barbara I. Antonucci*
                                      Barbara I. Antonucci
                                      Andrea N. Rawlins
                                      Attorneys for Defendant
                                      COMMERCIAL ENTERPRISES, INC.